IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| DAVID PETER MATHISON,<br><br>Plaintiff,<br><br>vs.<br><br>ORIOXI INTERNATIONAL CORPORATION,<br><br>Defendant. | No. C07-0129<br><br>ORDER COMPELLING DISCOVERY |

On the 27th day of May 2008, this matter came on for hearing on the Motion to Compel Discovery (docket number 14) filed by the Plaintiff on May 6, 2008. The Plaintiff did not appear, but was represented by his attorney, Leonard T. Strand. Defendant Orioxi International Corporation was represented by its attorneys, Amy L. Reasner and Wilford H. Stone.

In his Motion to Compel Discovery, Plaintiff requests that the Court enter an order requiring Defendant to produce information relating to the gross profit margin on sales generated by Plaintiff. Defendant resists, arguing that the information sought by Plaintiff is not relevant, is not readily available, and is confidential.

Until their relationship was severed in 2007, Plaintiff acted as an independent manufacturer's representative for Defendant. Plaintiff claims that the oral agreement which existed between the parties required a commission of 2% or 4%, depending on the gross profit margin generated by the sale. According to Defendant, the commission was based on "rough calculations on estimated gross margin" by Defendant's CEO and the commission would be adjusted accordingly.

1

> 5. From 2002-2005, Orioxi CEO Dr. Ziegfried Young would roughly calculate the estimated gross margin and then prepare the sales price (including Orioxi's "mark up" or margin) to the customer. Once the customer had negotiated the final sales price (including Orioxi's margin), Dr. Young would finalize the estimated gross margin in informal notes. The estimated gross margin calculation is performed selectively on a handful of styles before consummating the relationship with a customer and receipt of any potential business. Once this initial exercise is performed, this sliding scale would be set for the balance of the year regardless of actual company profit margins.
>
> 6. If Orioxi estimated it would gross 20% or more profit on a particular order, then it would pay Plaintiff 4% commission. If Orioxi estimated it would gross less than 20%, it would pay Plaintiff 2% commission. On some customer orders, due to such a small profit margin, Orioxi paid Plaintiff only 1% commission.

Chris Young's Affidavit in Support of Orioxi's Resistance to Plaintiff's Motion to Compel (docket number 17-2), ¶¶ 5 and 6 at 2.

Plaintiff disputes Defendant's claim, however, that a determination of the commission percentage was based on "estimated gross margin," as opposed to "actual gross margin."

> Defendant makes an artificial, or at least disputed, distinction between "estimated gross margin" and "actual gross margin." Plaintiff has never alleged, and does not agree, that his contract with defendant called for his commissions to be based only on "estimated" gross margins. Plaintiff is puzzled by defendant's statement that "the parties all agree" on this issue. Resistance at 3. That statement is simply incorrect and is supported by no citation to the record.

Reply in Support of Plaintiff's Motion to Compel Discovery (docket number 20), ¶ 1 at 1.

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim. FED. R. CIV. P. 26(b). Since the parties dispute the terms of the oral

2

agreement which existed between them, the Court concludes that Plaintiff is entitled to discover information pertaining to actual gross margins on the sales generated by him. During the discovery provided thus far, Plaintiff has received two spreadsheets showing gross receipts for various sales, related expenses, and gross profit.[1] It is believed that similar spreadsheets exist for other sales generated by Plaintiff.

The Court concludes that Defendant must produce those spreadsheets similar to that discussed at the hearing , relating to sales generated by Plaintiff between 2002-2007. At this time, Defendant is not required to produce the documents underlying the information set forth in the spreadsheets.[2] By agreement of the parties, the spreadsheets produced pursuant to this Order shall be considered "CONFIDENTIAL" and governed by the Protective Order (docket number 9) previously entered by the Court. Furthermore, the spreadsheets pertaining to sales made in 2007 shall be considered "CONFIDENTIAL - ATTORNEYS EYES ONLY," as set forth in the Protective Order. Counsel for Plaintiff may disclose the 2007 information to his expert witness, but the information shall not be disclosed to any other persons, including Plaintiff, without further court order or agreement of the parties.

## ORDER

IT IS THEREFORE ORDERED that the Motion to Compel Discovery (docket number 14) filed by the Plaintiff is hereby **GRANTED** in part and **DENIED** in part as follows: No later than June 6, 2008, Defendant shall produce to Plaintiff's counsel copies of the spreadsheets of the type shown in the document identified with the Bates stamp

---

[1] At the time of hearing, one of the spreadsheets was referred to as "Exhibit C." It was attached to a letter from Mr. Strand to Ms. Reasner, dated April 30, 2008 and is marked with Bates stamp number 788. It can be found in the file in docket number 14-6 at 3.

[2] Samples of the underlying documents were attached to the Affidavit of Chris Young and were identified as Exhibits 1, 2, and 3. (*See* docket numbers 17-3, 17-4, and 17-5.)

number 788, pertaining to sales generated by Plaintiff between 2002-2007. The information relating to 2002-2006 shall be designated "CONFIDENTIAL" and the information pertaining to 2007 shall be designated "CONFIDENTIAL - ATTORNEYS EYES ONLY," as set forth in the Protective Order (docket number 9) entered previously by the Court.

DATED this 28th day of May, 2008.

JON STUART SCOLES
United States Magistrate Judge
NORTHERN DISTRICT OF IOWA